IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MATTHEW LABREC,

                Plaintiff,

      v.                                                                OPINION and ORDER

DUSTIN MEEKER, HENRY HANSEN,                        17-cv-485-jdp
JONATHAN KORDUCKI, KEVIN PHILLIPS,
MICHAEL JULSON, and JESSE BEAVER,

                Defendants.

Pro se plaintiff Matthew LaBrec is a prisoner housed at Columbia Correctional Institution, where the events relevant to this case took place. He alleges that, in January 2017, while he was in the restrictive housing unit, several prison staff members failed to stop him from engaging in self harm, in violation of the Eighth Amendment and state law. Specifically, he alleges that he "bit . . . a large vein in his arm," which caused him to lose so much blood that he had to be taken to the hospital. Dkt. 1, ¶¶ 40–43.

Defendants have filed a motion for summary judgment on the ground that they were not on notice that LaBrec was likely to harm himself. Dkt. 48. But it is clear that defendants are not entitled to summary judgment on this ground. LaBrec has presented evidence that he told each of the defendants that he was going to try to kill himself, so I am denying defendants' motion.

Also before the court is LaBrec's motion for assistance in recruiting counsel. Dkt. 65. I am persuaded that the trial in this case will likely be too complex for LaBrec to handle on his own, so I will grant his motion.

## ANALYSIS

LaBrec's federal claim is governed by the Eighth Amendment. To prevail on this claim, LaBrec must show three things: (1) there was a strong likelihood that he would seriously harm himself in the near future; (2) defendants knew of that strong likelihood; and (3) defendants consciously failed to take reasonable measures to prevent him from harming himself. *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650 (7th Cir. 2012). For the purpose of their motion for summary judgment, defendants do not deny either that LaBrec was seriously harmed or that they did not take steps to prevent that from happening, so I will not consider those issues. *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 736 (7th Cir. 2006) ("As a general matter, if the moving party does not raise an issue in support of its motion for summary judgment, the nonmoving party is not required to present evidence on that point, and the district court should not rely on that ground in its decision.").

Neither side explains why LaBrec harmed himself. The question raised by defendants' motion is whether each defendant knew of a strong likelihood that he would do so. Because a reasonable jury could find that they did, I will deny defendants' motion for summary judgment.

LaBrec avers in his declaration and verified complaint that he provided notice to defendants (all prison staff members) in the following ways:

- at 2:30 p.m., LaBrec told defendant Michael Julson that he "felt like self harming," but Julson said he was "busy" and walked away, Dkt. 64, ¶ 3;

- between 2:45 p.m. and 5:30 p.m., LaBrec showed all defendants except Jesse Beaver that that he had fashioned a noose from a towel; LaBrec gave the towel to an officer who is not a defendant, Dkt. 1, ¶¶ 20–21;

- at 5:30 p.m., LaBrec told Julson that he wanted to kill himself and "would not make it through the night," but Julson told LaBrec that he couldn't help, so

LaBrec should "just hang in there until Monday," Dkt. 1, ¶¶ 22–23 and Dkt. 64, ¶ 13;

- LaBrec told Julson to "call an ambulance," and covered the window on his cell door, which was the only way staff could monitor him; LaBrec began biting his arm at that time, Dkt. 1, ¶ 24;

- at 6:30 p.m., while his window was still covered, LaBrec told Julson he was killing himself, but Julson walked away, Dkt. 64, ¶ 17;

- while defendants Dustin Meeker, Henry Hansen, Kevin Phillips, and Jonathan Korducki were outside his cell, LaBrec said things such as, "It's too late," "It's going to be bloody," and "I'm killing myself," Dkt. 1, ¶ 28; *see also* Dkt. 28, ¶¶ 3–6;

- when defendant Hansen asked LaBrec whether he wanted his medications, LaBrec said, "dead people don't need meds," Dkt. 1, ¶ 35;

- when defendants Meeker and Beaver asked LaBrec whether he wanted his medications, LaBrec said, "I don't need my meds, I'm killing myself"; Meeker said, "ok, sounds good," *id.*, ¶ 38.

Defendants admit that LaBrec told each of them that he wanted to hurt or kill himself. Dkt. 70, ¶ 9. And the court of appeals has held repeatedly that statements that a prisoner is going to kill or seriously harm himself are sufficient to put prison staff on notice of a strong likelihood that a prisoner will engage in self harm. *Miller v. Harbaugh*, 698 F.3d 956, 962–63 (7th Cir. 2012) ("If the state officers can observe or are told that their detainee is indeed so disturbed that his next step is likely to be suicide, and yet they do nothing, it is fair to say that they have gone beyond mere negligence and entered the territory of the deliberately indifferent."); *Sanville v. McCaughtry*, 266 F.3d 724, 737–38 (7th Cir. 2001) ("[I]f [the prisoner] told [the defendants] that he was suicidal, that alone should have been enough to impute awareness of a substantial risk of suicide.") (internal quotations omitted). So defendants are not entitled to summary judgment.

Defendants resist this conclusion for three reasons: (1) LaBrec "never told the defendants how he planned to" kill himself; (2) defendants did not believe that LaBrec had any property in his cell that he could use to harm himself; and (3) defendants did not actually see LaBrec biting his arm. Defendants are free to makes these arguments to the jury, but they do not entitle defendants to summary judgment.

Defendants' first contention—that they cannot be held liable if they did not know the particular way that LaBrec intended to harm himself—is frivolous. Cases such as *Miller* and *Sanville* do not require such specificity. In fact, the court of appeals has stated that "the vague nature of [a] complaint [may make] it even more incumbent on [a correctional officer] to investigate further." *Velez v. Johnson*, 395 F.3d 732, 736 (7th Cir. 2005) ("What matters is that [the defendant] was aware of a serious risk of harm in some form. . . . [J]ust because [the plaintiff] did not volunteer detailed information does not mean that [the defendant] was not made aware of a serious risk."). *See also Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 680–81 (7th Cir. 2012) (door-kicking by inmates was sufficient "to alert the guards that something was amiss and convince them to come into the unit so that they could be told just what that was"). Defendants cite no contrary authority.

In a case involving self harm, the important question is whether the prisoner communicated by his statements or actions a sincere intent to harm himself. How he plans to carry out his threat may be relevant in determining how staff should respond, but ignorance of the particular means of self harm is not ignorance that harm is likely to occur. In this case, defendants do not identify any reason why they would have believed that LaBrec did not mean

to harm himself. It is undisputed that LaBrec has an "extensive history" of engaging in acts of self harm. Dkt. 70, ¶ 1.[1]

Defendants' second contention—that LaBrec didn't have objects in his cell that he could use to harm himself—fails as well. As this case shows, a prisoner can harm himself in many ways. *See Cavalieri v. Shepard*, 321 F.3d 616, 621 (7th Cir. 2003) (rejecting argument that officers were not aware of suicide risk because prisoner didn't have any objects that he could use as a weapon). Again, it is undisputed that LaBrec had harmed himself many times before, even when he was in restrictive housing.[2]

But even if I assume that defendants weren't aware of the possibility that LaBrec would bite himself, a reasonable jury could find that defendants were aware of a strong likelihood of harm. It is undisputed that LaBrec was not on a "sharps" restriction at the time, which means that he was allowed to have hard plastic hygiene items. Dkt. 70, ¶ 4. And even if LaBrec was not *allowed* to keep dangerous objects, this doesn't mean he didn't have them. He had

---

[1] Defendants say that the court should not consider LaBrec's previous acts of self harm because he hasn't presented evidence that any of the defendants were aware of those acts. LaBrec says that defendants must have known about them because he has harmed himself so many times. That is not necessarily an unreasonable inference, particularly as to defendants who say that they have been employed at the Columbia prison for several years or more. *E.g.*, Dkt. 51, ¶ 3 (Julson had been employed at the Columbia prison since 2010). And none of the defendants aver in their declarations that they were unaware of LaBrec's history. But it makes no difference to the outcome of defendants' motion for summary judgment, so I will assume that defendants did not know about LaBrec's past acts of self harm. Nevertheless, the past acts are relevant at least for the limited purpose of rebutting an inference that defendants had affirmative reasons for believing that LaBrec was not a threat to himself.

[2] In fact, prison records show that LaBrec had even previously bitten "a hole in his hand" while he was in restrictive housing in 2015. Dkt. 64-1, at 27.

previously cut himself with paint chips, Dkt. 70, ¶ 15, as well as staples, grout, caulking, eyeglasses, and pen inserts, Dkt. 64, ¶ 218.

LaBrec also could have obtained dangerous items from other prisoners. As Wisconsin prison officials have observed in other cases, even prisoners in segregation are able to obtain dangerous contraband. *E.g.*, *Johnson v. Jess*, No. 13-cv-113-wmc, 2015 WL 9239013, at *2 (W.D. Wis. Dec. 17, 2015) (noting problem of prisoners smuggling contraband into segregation); *Strickland v. Van Lanen*, No. 13-cv-1127, 2015 WL 905296, at *3 (E.D. Wis. Mar. 3, 2015) (noting "numerous incidents" in which prisoners in segregation misused medication, including by hoarding it so that they could attempt an overdose); *Cherry v. Frank*, No. 03-C-129-C, 2003 WL 23205817, at *8 (W.D. Wis. Dec. 4, 2003) (prison officials alleged that prisoner in segregation obtained nails and staples).

All of this is to say is that it should have been obvious to defendants that LaBrec could have harmed himself even with restricted access to property. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."). What's worse, LaBrec avers in his affidavit that he covered his cell window, so defendants couldn't see in. Dkt. 64, ¶ 14. (Defendants do not allege that there was a camera in the cell, or, if there was, that they used the camera to observe LaBrec.) If LaBrec's allegation is true (and I must assume that it is for the purpose of defendants' summary judgment motion), then defendants had no way of confirming without entering his cell whether LaBrec was harming himself, so defendants are not entitled to summary judgment on this ground.

Defendants' third contention—that they cannot be held liable because they didn't see LaBrec engaging in self harm—is frivolous as well. The test under the Eighth Amendment is whether the defendants were aware of a strong likelihood of serious harm, not whether they witnessed harm occurring. As noted above, LaBrec alleges that defendants *couldn't* see him engaging in self harm because he had covered the only view into his cell. Thus, adopting defendants' view would allow prison staff to simply bury their heads in the sand even when there was a strong reason to believe that a prisoner was in danger. That is not the law. *Farmer*, 511 U.S. at 843 n.8 (a defendant may "not escape liability if the evidence show[s] that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist"); *Norwood v. Strahota*, No. 08-cv-446-bbc, 2008 WL 3455959, at *4 (W.D. Wis. Aug. 12, 2008) ("[O]nce officials are aware of a threat, they may not simply bury their heads in the sand and refuse to look into the matter.").

Defendants rely on two cases to support their position, but the first is easily distinguishable and the second is inconsistent with circuit law. First, defendants cite one of LaBrec's previous cases, *LaBrec v. Walker*, No. 16-cv-774-jdp, 2018 WL 1108724 (W.D. Wis. Feb. 27, 2018), in which LaBrec alleged that prison staff failed to protect him from an assault by his cell mate. Although LaBrec had asked for a cell transfer before the assault, I granted defendants' motion for summary judgment because LaBrec had not explained to the defendants why he believed his cell mate was dangerous: "a vague statement that a prisoner feels unsafe does not trigger a constitutional duty to move a prisoner to a different cell; the prisoner must explain why he feels unsafe." *Id.* at *1.

It should be obvious why *Walker* isn't instructive in this case. When a prisoner is alleging that he believes that another prisoner may harm him, he must provide some objective basis for that belief. This is because a prisoner is not a mind reader; without some objective manifestation of a threat, there is no way for prison staff to know whether "his complaint is based on more than just discontent or paranoia." *Id.* at *4. But this logic doesn't hold when a prisoner is threatening to harm *himself*. No one is in a better position to predict LaBrec's own actions than LaBrec; he doesn't need objective evidence to prove his own intent. So if LaBrec says that he intends to harm himself, that threat should be taken seriously even if he doesn't provide details.

Defendants also cite *Shipp v. Wolf*, No. 17-C-560, 2018 WL 2416579 (E.D. Wis. May 29, 2018), which is more on point. In that case, the court granted summary judgment to the defendants on a claim involving a prisoner's self harm. Although the prisoner alleged that he told prison staff that he was going to cut himself, the court concluded that it was reasonable for staff to assume that the prisoner didn't have a razor because he was in restrictive housing and wasn't allowed to have one. *Id.* at *2.

I respectfully disagree with *Shipp*, which is inconsistent with cases such as *Sanville* in which the court of appeals stated that a threat of suicide is sufficient to put prison staff on notice of a strong likelihood of self harm. As I discussed above, even prisoners in segregation can find ways to commit serious acts of self harm. In any event, *Shipp* is distinguishable as well. In this case, LaBrec stated repeatedly over the course of several hours that he was going to harm himself. He showed defendants a noose. Although an officer took the noose, that should have been an indication that LaBrec was serious when he continued making threats and then

covered his cell window. Under these circumstances, a reasonable jury could find that defendants were not entitled to ignore LaBrec's threats.

In the alternative, defendants contend that they are entitled to qualified immunity, which applies unless, under the plaintiff's version of the facts, the law at the relevant time was clearly established that the defendants violated the plaintiff's rights. *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014). But I have already concluded that a reasonable jury could find that defendants were aware of a strong likelihood that LaBrec was going to harm himself. The court of appeals has rejected similar claims of qualified immunity in other cases involving a prisoner's self harm. *Estate of Clark v. Walker*, 865 F.3d 544, 551–52 (7th Cir. 2017) ("[The prisoner's] right to be free from deliberate indifference to his risk of suicide while he was in custody was clearly established at the time of his death in 2012."); *Cavalieri*, 321 F.3d at 623 ("[T]he right Mrs. Cavalieri asserts on behalf of Steven is the right to be free from deliberate indifference to suicide. There is no doubt that this right was clearly established prior to Steven's suicide attempt."); *Hall v. Ryan*, 957 F.2d 402, 404–05 (7th Cir. 1992) ("It was clearly established in 1986 that police officers could not be deliberately indifferent to a detainee who is in need of medical attention because of a mental illness or who is a substantial suicide risk.").

In *Estate of Clark*, the court held that the defendants were on notice because the prisoner's score on a screening tool indicated a "maximum risk of suicide." 865 F.3d at 553. In *Cavalieri*, the court relied primarily on a warning from the prisoner's mother that he threatened to kill himself if he was ever placed in custody again. 321 F.3d at 620–21. In *Hall*, the plaintiff had "known suicidal tendencies" and was exhibiting "wild behavior—cursing, flinging his shoes, urinating in his cell, and repeatedly flushing the toilet." 957 F.2d at 405. The facts in these

cases are sufficiently comparable to place defendants on notice in this case as well. If anything, the court of appeals has concluded that judgment as a matter of law was inappropriate in cases involving more ambiguous facts. *Key v. Kolitwenzew*, 630 F. App'x 620, 623 (7th Cir. 2015) (defendants on notice because prisoner informed staff that he experienced "self-mutilating impulses" when he was taken off his medication); *Pittman ex rel. Hamilton v. Cnty. of Madison, Ill.*, 746 F.3d 766, 778 (7th Cir. 2014) (defendants on notice because prisoner asked to see a crisis intervention person and defendant was aware that prisoner was mentally ill); *Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984, 990 (7th Cir. 2012) (defendants knew about prisoner's "history of self harm and suicide attempts").

The only case defendants cite in support of a qualified immunity defense is *Shipp*, but that case was decided in 2018, so defendants could not have relied on it in January 2017, when the events in this case occurred. Regardless, the law of this circuit is clear that a prisoner's threat to kill himself is sufficient to put officers on notice of a strong likelihood of serious self harm. So defendants are not entitled to qualified immunity or to summary judgment.

LaBrec also brought a negligence claim against each defendant. But defendants' only argument related to that claim is that the court should decline to exercise supplemental jurisdiction in the event that the court dismisses the Eighth Amendment claims. Because I am allowing LaBrec's Eighth Amendment claims to go forward, I will retain jurisdiction over the state law claims as well.

The only remaining question is whether LaBrec has shown that he is entitled to assistance in recruiting counsel. He must show three things: (1) he is indigent; (2) he has made reasonable efforts to find counsel on his own; and (3) the case is too complex for him to litigate

on his own. *Walker v. Price*, 900 F.3d 933, 938 (7th Cir. 2018); *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007).

LaBrec has met the first requirement because he is proceeding *in forma pauperis* under 28 U.S.C. § 1915. He has met the second requirement by asking three lawyers to represent him. And I am persuaded that he has met the third requirement as well because the issues at trial are likely to be more complex than LaBrec can handle on his own. Accordingly, I will grant LaBrec's motion for assistance in recruiting counsel.

## ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 48, is DENIED.

2. Plaintiff Matthew LaBrec's motion for assistance in recruiting counsel, Dkt. 65, is GRANTED. All remaining deadlines are STRUCK and the case is STAYED pending recruitment of counsel for LaBrec. If I find counsel willing to represent LaBrec, I will advise the parties of that fact. Soon thereafter, a status conference will be held to set a new schedule. LaBrec is advised that because of the large number of requests for counsel that the court receives, the search for counsel may take several weeks or even months and there is no guarantee that the court will find counsel willing to represent him.

Entered November 7, 2018.

BY THE COURT:

/s/
_____

JAMES D. PETERSON
District Judge